UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALONZO CHAPMAN,

          Plaintiff,

v.                                           Case No. 15-CV-14

MILWAUKEE COUNTY,

          Defendant.

# DECISION AND ORDER

## I. Procedural History

On January 6, 2015, plaintiff Alonzo Chapman filed a complaint alleging that his employer, defendant Milwaukee County, violated Title VII of the Civil Rights Act of 1964 when it discriminated against him due to his race. (ECF No. 1.) He amended his complaint the following day. (ECF No. 2.) Shortly after new counsel appeared on behalf of Milwaukee County, on August 12, 2015, the county moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (ECF No. 13.) The court granted the motion on September 25, 2015, concluding that it was clear from the amended complaint that Chapman had not filed his charge of discrimination with the EEOC within 300 days of the alleged discrimination. *Chapman v. Milwaukee Cnty.*, 2015 U.S. Dist. LEXIS 130195

(E.D. Wis. Sept. 25, 2015). The court gave Chapman the opportunity to file a second amended complaint, which he did on October 2, 2015. (ECF No. 19.) Milwaukee County has now moved to dismiss the second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

The court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper under 42 U.S.C. § 2000e–5(f)(3). All parties have consented to have this court resolve this matter. (ECF Nos. 3, 5.)

**II.   Facts**

Since April 2, 2012, Chapman has been an assistant fire chief at General Mitchell International Airport. (ECF No. 19, ¶ 8.) His supervisor until March 25, 2014, was Paul Menches, the airport's fire chief. (ECF No. 19, ¶ 8.) On March 28, 2013, Chapman reported to Menches "a very serious breach of firefighting protocol in connection with an emergency situation with a plane landing." (ECF No. 19, ¶ 10.) When Menches did nothing to address the matter, Chapman reported the incident and Menches's inaction to the airport's deputy director, Terry Blue. (ECF No. 19, ¶ 10.)

In early 2013 Chapman disagreed with Menches's decision not to hire a female who was "ranked highest among candidates by far." (ECF No. 19, ¶ 12.) Menches reportedly stated that his reason for not hiring her was because the department had "enough female firefighters." (ECF No. 19, ¶ 12.) Chapman "made known within the

2

Department his strong objections to the chief's hiring decision, and specifically to the stated basis for the decision." (ECF No. 19, ¶ 12.)

Shortly after Chapman spoke with Blue about Menches, Menches went to Chapman's "office and initiated a conversation with [Chapman] that was threatening and intimidating." (ECF No. 19, ¶ 11.) Blue then attempted to persuade Chapman to withdraw his complaint regarding Menches. (ECF No. 19, ¶ 11.) Chapman refused, leading Milwaukee County to "implement[] a series of discriminatory actions against him over the following ten month period whereby he was systematically stripped of duties and assignments that he had previously performed as an Assistant Fire Chief" (ECF No. 19, ¶ 11), including removing Chapman from his role overseeing panels to assess firefighter applicants (ECF No. 19, ¶ 12), inspecting and purchasing fire trucks (ECF No. 19, ¶ 13), acting as the airport's safety officer (ECF No. 19, ¶ 14), and assisting in policy development (ECF No. 19, ¶ 15). The removal of duties did not occur with respect to other Assistant Chiefs who were white. (ECF No. 19, ¶ 11.)

With respect to his role overseeing the purchasing of fire trucks, Chapman "sought to enlist the advice and counsel of Thomas Torres, an African American firefighter at GMIA, who was the most knowledgeable employee about the subject matter. Two white Assistant Chiefs, Scott Wisniewski and Kevin Doyne, did not want [Chapman] to include Mr. Torres in the discussion because of their dislike for him. [Chapman] refused to exclude Mr. Torres for that reason." (ECF No. 19, ¶ 13.)

Chapman contends that Milwaukee County removed responsibilities from him because of his race, because he refused to withdraw the complaint against Menches, and because he spoke "out about race and gender matters." (ECF No. 19, ¶ 16.) This, he alleges, was done in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. (ECF No. 19, ¶¶ 17, 24.)

Chapman separately alleges that Milwaukee County violated 42 U.S.C. § 1981 when it suspended him following his complaint about Menches. (ECF No. 19, ¶¶ 19-24.) Chapman contends that, contrary to white employees, he was not afforded the benefit of progressive discipline before he was suspended. (ECF No. 19, ¶¶ 21-23.)

### III. Analysis

Milwaukee County argues that Chapman's Title VII discrimination claim must be dismissed because an alteration of job duties, with no change in pay, rank, or hours, does not constitute an adverse employment action. (ECF No. 21 at 2.) With respect to his Title VII retaliation claim, the county contends that Chapman does not allege or demonstrate that he engaged in any statutorily protected activity and because he was acting as a manager when he opposed the decision not to hire the female candidate. (ECF No. 21 at 8-12.) As for Chapman's § 1981 claims, the county argues that his retaliation claim fails because Chapman did not engage in any race-based statutorily protected activity and his discrimination claim fails because Chapman offers only legal conclusions rather than facts. (ECF No. 21 at 2.)

As a preliminary matter, Chapman makes passing references in his second amended complaint to state law claims. (ECF No. 19, ¶¶ 2, 9.) However, at no point does he develop any state law claim, and other portions of the second amended complaint are clear that Chapman is alleging only violations of federal law. (*See* ECF No. 19, "Nature of Action," ¶¶ 17, 24.) To the extent that Chapman attempted to allege in the second amended complaint a violation of state law, the court finds that he has failed to do so and any such claim is dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Additionally, the court reminds Chapman's counsel that this court's local rules require that case names be either underlined or italicized. Gen. L.R. 5(a)(7). Failure to follow this requirement impairs the readability of a brief.

**A. Title VII Discrimination**

With respect to Chapman's allegation that he suffered discrimination in violation of Title VII, aside from an isolated, incongruous, and conclusory statement (ECF No. 22 at 5 ("Mr. Chapman has alleged that the defendant stripped him of duties because of his race.")), Chapman offers no response to the county's argument that the assignment changes he alleges did not constitute adverse employment actions.

"A materially adverse employment action is something 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Nichols v. S. Ill. University-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007) (quoting *Rhodes v. Ill. DOT*, 359 F.3d 498 (7th Cir. 2004)). For purposes of a Title VII discrimination claim, the Court of the

Appeals for the Seventh Circuit has identified three general categories of actionable adverse employment actions: (1) diminishment in financial terms of employment, including termination of employment; (2) a transfer that significantly impairs the employee's career prospects; or (3) significant negative changes in workplace environment that, for example, subject the employee to "humiliating, degrading, unsafe, [or] unhealthful" conditions. *Id.*

Title VII's anti-retaliation provision, discussed below, proscribes much broader conduct, including actions not directly related to the employment relationship. *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 67 (2006). Although Chapman does argue that the adverse consequences he allegedly suffered constituted retaliation, the retaliation provision is not coextensive with the discrimination provision and his arguments do not necessarily apply to his discrimination claim. Because Chapman has not defended his discrimination claim against Milwaukee County's motion to dismiss, the defendant's motion must be granted with respect to Chapman's Title VII discrimination claim.

**B. Title VII Retaliation**

Chapman's response to Milwaukee County's motion with respect to his Title VII claim is limited to his allegation that he suffered unlawful retaliation. (*See* ECF No. 22 at 4 ("The plaintiff's Title VII claims allege that the defendant stripped him of several significant job duties because of his race and the fact that he had engaged in lawfully

protected conduct opposing what he objectively believed to be race and gender based discrimination.").)

When it comes to proscribed employer conduct, the retaliation provision of Title VII is broader than the discrimination provision. *Burlington Northern*, 548 U.S. at 67. However, the retaliation must still result in an injury or harm to be actionable. *Id.* "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (internal quotation marks omitted). This does not mean that Title VII is "a general civility code for the American workplace." *Id.* at 68 (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)). "[N]ormally petty slights, minor annoyances, and simple lack of good manners" are not actionable. *Id.*

As the court noted above with respect to Chapman's Title VII discrimination claim, the retaliation and discrimination provisions of Title VII are not coextensive with respect to the actions proscribed. An argument with respect to whether a particular adverse consequence was actionable under the discrimination provision does not necessarily apply to the retaliation provision. Milwaukee County does not argue that the alteration of Chapman's job duties was insufficient to be actionable under Title VII's retaliation provision. Consequently, for purposes of the present motion, the court presumes that the county's alleged actions were sufficient adverse actions for purposes

of stating a retaliation claim. Milwaukee County contends only that Chapman's retaliation claim fails because Chapman did not engage in any protected activity and because he was acting as a manager when he opposed the decision to not hire the female firefighter candidate. (ECF No. 21 at 8-12.)

### 1. Protected Activity

Title VII prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e-3. A plaintiff must first "show that he took some step in opposition to a form of discrimination that the statute prohibits." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 631 (7th Cir. 2011). It is not necessary that the conduct the plaintiff opposed actually violated Title VII; rather, the plaintiff's opposition is protected if he has an honest, good faith, and reasonable belief that the conduct he is opposing is prohibited by Title VII. *Id.* "[U]tterly baseless claims do not receive protection under Title VII." *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 890 (7th Cir. 2004). Thus, an employer may discipline an employee for making frivolous complaints. *Id.*

Moreover, the plaintiff need not be the victim of the purported discrimination; an employer may not retaliate against an employee who opposes discrimination against a co-worker. *Rucker v. Higher Educational Aids Bd.*, 669 F.2d 1179, 1182 (7th Cir. 1982). However, if the plaintiff's opposition is "excessively disloyal or hostile or disruptive and damaging to the employer's business," Title VII does not immunize him from

8

repercussions for his inappropriate conduct. *Reeder-Baker v. Lincoln Nat'l Corp.*, 649 F. Supp. 647, 656 (N.D. Ind. 1986) (quoting *Mozee v. Jeffboat, Inc.*, 746 F.2d 365, 374 (7th Cir. 1984); citing *Hochstadt v. Worcester Foundation for Experimental Biology, Inc.*, 545 F.2d 222 (1st Cir. 1976)). To adequately state a claim for Title VII retaliation, the complaint must specifically identify the protected activity that the plaintiff allegedly engaged in. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) (citing *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 781 (7th Cir. 2007)).

Chapman identifies two allegedly protected actions that he undertook. First, with respect to Menches's decision not to hire a female firefighter, "he made known within the Department his strong objections to the chief's hiring decision, and specifically to the stated basis for the decision," namely Menches's view "that the Department had 'enough female firefighters.'" (ECF No. 19, ¶ 12; ECF No. 22 at 3-4.) Second, Chapman says he refused "to disregard the role, input and contribution of an African American employee in the purchasing process." (ECF No. 22 at 4.)

The court finds that Chapman's refusal to exclude Torres from the discussion regarding purchasing new fire trucks fails to plausibly constitute protected activity within the scope of Title VII. Chapman alleges in his second amended complaint merely that Torres was "an African American firefighter at GMIA" and that "[t]wo white Assistant Chiefs, Scott Wisniewski and Kevin Doyne, did not want the plaintiff to include Mr. Torres in the discussion because of their dislike for him." (ECF No. 19,

¶ 13.) Chapman does not allege that he believed the assistant chiefs' dislike of Torres was based on Torres's race. Nor does Chapman present details sufficient to support an inference that Chapman had an honest, good faith, and reasonable belief both that the chiefs were excluding Torres because of his race and that this exclusion violated Title VII. Therefore, Chapman has failed to allege that his refusal to exclude Torres from the purchasing process was protected activity. Consequently, this claim fails under Title VII.

With respect to the hiring of another female firefighter, the court finds that the second amended complaint adequately alleges that Chapman engaged in protected activity. It is not necessary that Chapman employ any formal means, such as filing a written complaint, to be protected under Title VII's anti-retaliation provision. *See, e.g., Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (citing *Equal Employment Opportunity Commission v. Hacienda Hotel*, 881 F.2d 1504, 1514 fn. 3 (9th Cir. 1989)); *Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 59, 65 (2d Cir. 1992). Rather, the court finds that allegedly "ma[king] known within the Department his strong objections to the chief's hiring decision, and specifically to the stated basis for the decision" (ECF No. 19, ¶ 12), is sufficient to state a claim. Notwithstanding the county's observation that the second amended complaint does not specifically allege that Menches was aware of Chapman's objections, Menches's knowledge is fairly inferred from Chapman's allegation that his objections were made known within the department.

Details of Chapman's objections, including whether they were really based on a perceived violation of Title VII or merely, for example, objections to what he believed to be a poor management decision, *see, e.g., Steele v. Kroenke Sports Enters., L.L.C.*, 264 Fed. Appx. 735, 746 (10th Cir. 2008) (unpublished) (holding that plaintiff's complaint that action was "unfair" was not protected activity) (citing *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002); *cf. Tate v. Exec. Mgmt. Servs., Inc.*, 546 F.3d 528, 532-33 (7th Cir. 2008) (holding that plaintiff's retaliation claim failed because, although the plaintiff told his boss he did not wish to continue a sexual relationship with her, he never indicated a belief that he was being sexually harassed), and whether the relevant decision-maker knew of Chapman's complaints, *see Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668 (7th Cir. 2006) (quoting *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004) ("[i]t is not sufficient that an employer could or even should have known about an employee's complaint; the employer must have had actual knowledge of the complaints for its decisions to be retaliatory[]") (brackets and quotation marks omitted), are matters for summary judgment or, perhaps, trial.

### 2. "Manager Rule"

Milwaukee County argues that any claim emerging from Chapman's opposition to Menches's refusal to hire a female firefighter is nonetheless barred because the second amended complaint alleges that he was acting as a manager in opposing the hiring decision. (ECF No. 21 at 11-12.) Under the "manager rule," an employee does not

engage in protected activity when that employee's supervisory responsibilities include reporting and objecting to discriminatory conduct. *Collazo v. Bristol-Myers Squibb Mfg.*, 617 F.3d 39, 49 (1st Cir. 2010). Rather, protected oppositional conduct is limited to actions where the employee steps outside his ordinary employment role. *Id.*

The Court of Appeals for the Seventh Circuit has not had occasion to consider the manager rule. *Howe v. Sears, Roebuck & Co.*, 990 F. Supp. 2d 913, 921 (W.D. Wis. 2014). However, the Court of Appeals for the Eleventh Circuit in an unpublished decision found the manager rule a "persuasive and a viable prohibition against certain individuals recovering under Title VII," *Brush v. Sears Holdings Corp.*, 466 Fed. Appx. 781, 787 (11th Cir. 2012), and the Court of Appeals for the First Circuit presumed it applied to Title VII claims before finding it inapplicable in the case before it, *Collazo*, 617 F.3d at 49; *see also Weeks v. Kan.*, 503 Fed. Appx. 640, 642 (10th Cir. 2012) (holding that for an in-house lawyer to prevail on an oppositional retaliation claim she must have done more to oppose the discrimination than simply advise her employer how to resolve a discrimination claim); *EEOC v. HBE Corp.*, 135 F.3d 543, 554 (8th Cir. 1998) (discussing the argument that the employee's oppositional activities did not "step outside" his employment role, but finding it inapplicable).

The Courts of Appeals for the Second and Fourth Circuits, however, both recently rejected the rule, holding that "[t]he manager rule's focus on an employee's job duties, rather than the oppositional nature of the employee's complaints or criticisms, is

inapposite in the context of Title VII retaliation claims," *Littlejohn v. City of New York*, 795 F.3d 297, 317 (2d Cir. 2015), and "the 'manager rule' has no place in Title VII jurisprudence," *DeMasters v. Carilion Clinic*, 796 F.3d 409, 413 (4th Cir. 2015). In doing so, those courts joined the Court of Appeals for the Sixth Circuit, which held in 2000 that an employee's "contractual duty to voice [discrimination] concerns is of no consequence to his [retaliation] claim." *Johnson v. University of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000).

Developed in the context of the Fair Labor Standards Act, the manager rule "purports to address a concern that, if counseling and communicating complaints are part of a manager's regular duties, then 'nearly every activity in the normal course of a manager's job would potentially be protected activity,' and '[a]n otherwise typical at-will employment relationship could quickly degrade into a litigation minefield.'" *DeMasters*, 796 F.3d at 421 (quoting *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 628 (5th Cir. 2008)). But "courts have generally applied [the] rule only to managers in human resources departments or those with specific duties related to investigating personnel issues, not to managers in other areas." *Howe*, 990 F. Supp. 2d at 921.

The concerns about creating a "litigation minefield" were presumably considered by Congress in passing 42 U.S.C. § 2000e-3(a). Yet notably this section refers to retaliation against "any" employee; the law "does not distinguish among entry-level

employees, managers, and any other type of employee." *Littlejohn*, 795 F.3d at 318. The court is not permitted to create exceptions that are inconsistent with the statute. *Id.*

Moreover, the court finds that adopting the manager rule to a Title VII case such as this would undermine the overall purpose of deterring and preventing discrimination. *See DeMasters*, 796 F.3d at 422-23. In the context of discriminatory hiring practices, managers involved in that hiring decision are often likely to be in the best position to recognize discrimination. If unprotected from retaliation, these managers may be deterred from voicing their opposition, thus not only leaving the discrimination buried but arguably fostering its continuation. This is precisely what § 2000e-3(a) intended to prevent. Finally, even if the court were to accept the rule, it would not appear to apply to Chapman, who was not a human resources employee or part of the county's human resources department, the category of employees to which the rule is generally applied, *see Howe*, 990 F. Supp. 2d at 921. Therefore, the court finds that the "manager rule" does not bar Chapman's Title VII retaliation claim.

### 3. Exhaustion of Administrative Remedies

Finally, Milwaukee County contends that Chapman's Title VII retaliation claim must be dismissed because he did not exhaust his administrative remedies. (ECF No. 21 at 12-15.) It argues that the Chapman did not include the removal of extra job duties in his EEOC charge. (ECF No. 21 at 12.) Chapman responds, "There is a reasonable relationship between the allegations in his EEOC charge and the claims of the complaint

14

such that the complaint claims could reasonably be expected to grow out of an EEOC investigation of the allegations in his charge." (ECF No. 22 at 9.)

"[A] plaintiff is barred from raising a claim in the district court that had not been raised in his or her EEOC charge unless the claim is reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the charges actually raised." *Whitaker v. Milwaukee County*, 772 F.3d 802, 812 (7th Cir. 2014) (quoting *Green v. National Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1999)). "[T]o be reasonably related to one another, there must be 'a factual relationship between them.'" *Id.* (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994)). "This means that the EEOC charge and the complaint must, at minimum, 'describe the same conduct and implicate the same individuals.'" *Id.* at 812-13 (quoting *Cheek*, 31 F.3d at 501).

Chapman's EEOC charge, which the court is able to consider without converting the present motion into one for summary judgment because it was referenced in the second amended complaint, *see Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014), states in relevant part:

> 1. I began working for the Respondent in April 2012 as an assistant chief. I am being subjected to discriminatory terms and conditions of employment. For example, in December 2012, my request to have a later start time on occasion because of child care and family needs was denied, while in December 2013, when the same request was made by a white assistant chief, for child care and family needs, that request was approved. During my employment, I have made internal complaints about illegal discrimination and potential illegal discrimination I had observed. One example I brought to the Respondent's attention was the reluctance of the Respondent to hire a highly qualified female fire fighter because we may

> need additional facilities for women if we hired a fourth female. Another example was what appeared to be discriminatory discipline that the chief wanted me to issue, which I questioned. Around May 2, 2013, I was informed of Respondent's intent to issue me a 10-day unpaid suspension, which I served that same month.
>
> 2. I believe I have been subjected to discriminatory terms and conditions of employment on the basis of my race, black, and that I was suspended on the basis of my race, black, plus retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended including section 704(a).

(ECF No. 15-1.)

Chapman explicitly refers to the incident involving the hiring of the female firefighter in his EEOC charge and alleges that he suffered retaliation. The EEOC charge makes no mention of the elimination of job duties, but the court finds that it was unnecessary for Chapman to allege every form of retaliation he allegedly suffered. The court finds that the allegations in the second amended complaint are "'like or reasonably related to the allegations of the EEOC charge and growing out of such allegations.'" *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 634 (7th Cir. 2013) (quoting *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256-57 (7th Cir. 2011)) (brackets omitted). As a result, the court finds that Chapman exhausted his retaliation claim relating to Menches's refusal to hire the female firefighter.

IV. **Section 1981 Claims**

For the first time in the second amended complaint, Chapman alleges a claim under 42 U.S.C. § 1981. Section 1981 is similar to Title VII in that it prohibits workplace discrimination, but it differs in that it there is no requirement of first filing an EEOC

charge, *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 539 (7th Cir. 2007); *Jenkins v. Blue Cross Mut. Hospital Ins., Inc.*, 538 F.2d 164, 166 (7th Cir. 1976), and it does not apply to sex discrimination, *Friedel v. Madison*, 832 F.2d 965, 967 fn. 1 (7th Cir. 1987) (quoting *Runyon v. McCrary*, 427 U.S. 160, 167 (1976)). Thus, the only claim that the court found actionable under Title VII – retaliation due to Chapman's opposition to perceived sex discrimination – is not actionable under § 1981. As for the other claims that Chapman attempted to raise under Title VII in the second amended complaint, for the same reasons those claim fail under Title VII, they also fail under § 1981.

However, the Title VII discrimination claim regarding Chapman's suspension, which the court previously dismissed because Chapman's EEOC charge was not filed within 300 days, *see Chapman*, 2015 U.S. Dist. LEXIS 130195, 5-6, is revived in the second amended complaint as a § 1981 claim. Milwaukee County contends that this claim is insufficient because the second amended complaint offers mere legal conclusions unsupported by factual allegations. (ECF No. 21 at 16-19.)

Chapman's response regarding his § 1981 claim is brief:

> The plaintiff's complaint includes a claim that the defendant's action suspending him in May of 2013 was discriminatory and retaliatory as described in paragraphs 19 through 22 of the complaint, and that it was racially motivated and intentional as described in paragraph 23. The plaintiff also brings a claim of discrimination and retaliation under § 1981 for the defendants action to revise his job duties as described in paragraphs 11 through 15 of the complaint.

(ECF No. 22 at 10.)

17

The degree of specificity required in a complaint depends upon the complexity of the claim asserted. *Lavalais*, 734 F.3d at 633 (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616-17 (7th Cir. 2011)). Employment discrimination claims are not generally complex and thus not especially difficult to plead. *Id.*; *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). A complaint need allege only that the employer engaged in certain discriminatory conduct and that the discriminatory conduct was due to the plaintiff's protected status. *See Tamayo*, 526 F.3d at 1084. "[A] plaintiff alleging employment discrimination on the basis of race, sex or some other factor governed by 42 U.S.C. § 2000e-2 may allege the defendant's intent quite generally: "'I was turned down for a job because of my race' is all a complaint has to say." *Concentra Health Servs.*, 496 F.3d at 781 (quoting *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)). "The plaintiff is not required to include allegations—such as the existence of a similarly situated comparator—that would establish a prima facie case of discrimination under the 'indirect' method of proof." *Carlson*, 758 F.3d at 827.

Chapman's second amended complaint offers little more than bald conclusions to indicate that his suspension was due to race. In fact, at various points in the second amended complaint Chapman offers an alternative explanation for his suspension—his refusal to withdraw his allegations concerning Menches's compliance with firefighting protocol. (*See* ECF No. 19, ¶¶ 11, 15, 19.) Nonetheless, Chapman alleges that, because of his race, he was suspended rather than given the benefit of progressive discipline

18
Case 2:15-cv-00014-WED   Filed 12/15/15   Page 18 of 20   Document 25

(which presumably would have resulted in some lesser punishment for what Chapman implicitly concedes was some manner of disciplinable misconduct). (ECF No. 19, ¶¶ 20-24.) The Court of Appeals for the Seventh Circuit has made clear that such conclusory statements are sufficient to state a claim for racial discrimination. Consequently, the court finds that Chapman has stated a claim under § 1981 upon which relief might be granted. Therefore, Milwaukee County's motion will be denied with respect to Chapman's § 1981 claim alleging that his 10-day suspension was discriminatory.

**V.     Conclusion**

For the reasons set forth above, Milwaukee County's motion to dismiss the second amended complaint will be granted in part and denied in part. With respect to Chapman's Title VII claim, the second amended complaint adequately alleges that Chapman suffered retaliation as a result of his opposition to Menches's refusal to hire a female firefighter. Because this claim is like or reasonably related to the allegations of the EEOC charge and growing out of such allegations, Chapman exhausted his administrative remedies with respect to this claim. However, the second amended complaint fails to allege any other form of Title VII claim, and therefore any other claim under Title VII is dismissed.

As for Chapman's § 1981 discrimination claim, the second amended complaint adequately alleges that Chapman's 10-day suspension was discriminatory. However,

the second amended complaint fails to allege any other form of § 1981 claim, and therefore any other claim under § 1981 is dismissed.

**IT IS THEREFORE ORDERED** that Milwaukee County's motion to dismiss the second amended complaint (ECF No. 20) is **granted in part and denied in part**. The motion is denied with respect to Chapman's Title VII claim that he suffered unlawful retaliation for opposing discrimination with respect to the hiring of a female firefighter and denied with respect to Chapman's § 1981 claim that his 10-day suspension was unlawful racial discrimination. Milwaukee County's motion to dismiss the second amended complaint is granted as to all other claims. The court's prior scheduling order (ECF No. 10) remains in effect.

Dated at Milwaukee, Wisconsin this 15th day of December, 2015.

WILLIAM E. DUFFIN
U.S. Magistrate Judge